38 So.2d 616

### RESOLUTE FIRE INS. CO. v. O'REAR.
#### 6 Div. 773.

Court of Appeals of Alabama.
Jan. 11, 1949.

Application for Rehearing Stricken
Feb. 1, 1949.

Chas. E. Tweedy, Jr., and Jas. L. Beech, Jr., both of Jasper, for appellant.

Newton & Selman, of Jasper, for appellee.

CARR, Judge.

This cause of action is based upon breach of an alleged oral agreement to insure an automobile against damages thereto incident to collision or upset. The plaintiff, owner of the car, was awarded judgment in the court below.

It appears that the agent of the appellant company represented several insurance concerns. Among these were the Baltimore American Insurance Company of New York and the Resolute Fire Insurance Company; the latter was the defendant below. Prior to the time of the alleged agreement to insure, the appellee had a policy which covered collision damage with the former company. For some reason this contract was cancelled, and the agent of the appellant notified the insured by letter of this action.

Within a few days after the receipt of the written communication, the appellee went to see the agent. With reference to this interview we quote from the record:

"Q. Sergeant, after you got that letter, what did you do? A. A couple of days later—I don't recall what day it was I went up to see him, * * *

"Q. Mr. Sanders? A. That's right.

"Q. Tell the Court and Jury what happened on that occasion. A. I went up to see him, and as usual he is a pretty busy man, and I noticed him when I came up; he was pretty busy, and he said I was already taken care of—said I was well covered.

"Q. What? A. Well covered with insurance—taken care of.

"Q. Did you ask him about this cancellation of this policy? A. No, I didn't right then.

"Q. But you had gotten a letter from him? A. Yes, sir.

"Q. What did he tell you? A. When I went up, he, as usual, laughed and talked

with me and told me I was covered and taken care of.

"Q. Did he say you were covered with insurance?

"Mr. Tweedy: He made the statement twice and the attorney added an extra word Mr. O'Rear did not put in there. I object to the attorney leading the witness.

"Q. I want to get in detail what was said on that occasion. What did you say to Mr. Sanders? A. I didn't say anything exactly. I went up and he seen me; I was aiming to talk to him about it. He said, 'Ike, you are well taken care of and you are covered.'

"Q. (repeating) 'You are covered.' A. That's right. * * *

"Mr. Tweedy: Let me ask one question. (To witness) You have told everything that was said by you and Mr. Sanders that took place at that time?

"The Witness: Yes."

After the recollection of the witness had been refreshed he answered this question in the affirmative: "I want to ask you this Sergeant O'Rear: Did he say that you were reinsured?"

We have set out the above in detail in order to fairly and accurately respond to assignments of error numbered 10 and 11.

With reference to the above conversation, and after its introduction in evidence, the appellee was asked each of these questions:

"I want to ask if you didn't understand from what he told you on that occasion that you were well covered; that you had full coverage with fifty dollars deductible clause with Baltimore American, and if it were not your understanding that you had the same coverage with the same company he said he had reinsured you in?"

"Was it your understanding, Sergeant O'Rear, that you had the same type of coverage in this reinsurance he told you about that you had with Baltimore American?"

Over timely objections by the appellant, answers were allowed, and the reply to each was in the affirmative.

It cannot be questioned that the inquiries related to a very material and vital factual issue. In fact, the content of the above conversation included practically all of the evidence which related directly to the matter of the alleged oral agreement.

[redacted] It is axiomatic that in the law of evidence a witness ordinarily should not be permitted to answer a question which calls for a conclusion. A failure to adhere to the doctrine would in effect be an invasion of the province of the court or jury, as the case may be.

There is a rule that a conclusion may be admissible when the inquiry to which the evidence relates cannot be reproduced or accurately described to the jury or court as it appeared to the witness.

We will seek a correct conclusion to the matter of instant concern by reviewing some authorities, first from our appellate courts.

In Saltmarsh v. Bower & Company, 34 Ala. 613, the following statement was held objectionable: "I did not consider that this was a loan to Wm. Bower & Co."

"Charles Wood, a witness for the defendant, after having testified to having had a conversation with the plaintiff in reference to the sale of his land to the defendant in which the plaintiff told him about the price to be paid for the land, further testified that 'He (the plaintiff) left the impression that he was taking stock for his land.'" The Supreme Court sustained the action of the trial judge in granting a motion to exclude this statement. Larkinsville Mining Co. v. Flippo, 130 Ala. 361, 30 So. 358.

In an action for false imprisonment it was held that a witness could not testify from what he saw that he got the impression the plaintiff was under arrest. Hotel Tutwiler Operating Co. v. Evans, 208 Ala. 252, 94 So. 120.

Justice Bouldin, writing for our Supreme Court, observed: "The statements of expert accountants made up from the company's books and records, giving data in aid of the jury's ascertainment of the various items entering into a calculation of profits under the different theories of the parties, were admissible subject to proper instructions. It was not for these witnesses to give evidence based on their own views of the contract. That issue was for the

jury under the instructions of the court. Likewise, the extent of depreciation in fact deductible under the contract as they found it was for the jury." Navco Hardwood Co. v. Becks, 222 Ala. 631, 134 So. 4, 8.

In W. T. Rawleigh Co. v. Hannon, 245 Ala. 266, 16 So.2d 800, our Supreme Court held that it was a conclusion of a witness and objectionable to allow the witness to testify that a person is an agent of a corporation when it is clearly apparent that the reply was based merely on a conversation the witness had previously had with the person.

"Appellant complains that it was not allowed to prove by its witness and president what was his 'understanding' with reference to the closing of a transaction. That involved only the conclusion of the witness and was properly disallowed." Industrial Sav. Bank v. Mitchell, 25 Ala. App. 13, 140 So. 449, 451.

The Supreme Court indulged some relaxation to a strict construction of the rule in Gulf Trading Co. v. Radcliff, 216 Ala. 645, 114 So. 308, 316. Therein we find: "The witness' 'understanding,' when used in the sense of his recollection, or as expressive of a contract or transaction to the effect stated, is not rendered inadmissible by this manner of expression."

We will now review some authorities from other jurisdictions.

In the opinion in Snell v. Snow, 54 Mass. 278, 46 Am. Dec. 730 we observe: "The other exception of the plaintiff is also, in the opinion of the court, untenable. The witness, after stating all that the defendant said, with all the attendant circumstances and connections, was asked what meaning he understood the defendant to convey by these words. The judge very properly decided that the witness might testify to any existing facts or circumstances to which the defendant alluded and referred, if any; but, having given the whole conversation, it was for the jury to decide what was meant by the language used, and that it was not competent for the witness to testify to his understanding of the defendant's meaning, in the language used."

We copy the fourth headnote in the case of Nelms v. State of Mississippi, 21 Miss.

500, 53 Am. Dec. 94: "When precise words of dying man are stated and offered in evidence, the impressions made on the mind of the witness, who was present and heard the statements made by the deceased, can not be inquired into."

In Braley v. Braley, 16 N.H. 426, the effect of the holding was that if a witness testifies to what is said he shall not be permitted to further state what he understood to be meant by the language used. The court observed that the inference from the words used was for the jury to make.

In the case of Pope v. Peeples, 24 Ga. App. 467, 101 S.E. 303, the court sustained the action of the trial judge in refusing to allow the defendant to answer this question: "In this conversation he (the plaintiff) had with you, how did you regard the negotiations?" Reference is here made to a conversation the indicated parties had relating to an alleged agreement of listment for sale of property with a real estate broker.

■ "A witness cannot state the impression made on the witness by oral statement." Sloan v. Sloan, Tex. Civ. App., 32 S.W.2d 513, 517.

The first headnote in Hillock v. Grape, 111 App. Div. 720, 97 N.Y.S. 823, is: "Evidence that it was witness' understanding that plaintiff was to be a joint owner with defendant in all the assets of a firm and that it was the agreement that plaintiff should have half the money and a half interest in the horses, wagons, and sleighs belonging to the firm, were mere conclusions, and insufficient to sustain a judgment awarding plaintiff one-half of the value of such equipment in a suit for an accounting on dissolution."

With particular reference to the first question now under review, it is to be noted also that it is predicated on facts that are not supported by the evidence which had been previously introduced. According to the appellee's testimony, the agent did not state in the conversation that the former was reinsured in any designated company.

■ Questions should not be framed so as to assume facts which have not been established in the evidence. 19 Alabama Digest, Witnesses, ⬩ 237(3).

Both of the questions are highly leading and suggestive; however the grounds of the objections do not raise this point.

The inescapable conclusion follows that reversible error must be predicated on the action of the lower court in the matters of instant concern.

In view of the likelihood of another trial, we will not attempt a more detailed discussion of the tendencies of the evidence. We have given careful study to the entire record, and we are convinced that the general affirmative charge was not due the defendant.

This disposes of all questions to which we should respond.

It is ordered that the judgment of the court below be reversed and the cause remanded.

Reversed and remanded.

On Rehearing.

Upon submission of this cause no brief was filed in appellee's behalf.

The application for rehearing cannot be considered by this court for the reason that the requirements of Supreme Court Rule 38, Code 1940, Tit. 7 Appendix, have not been met. Hollander et al. v. State, 27 Ala. App. 454, 173 So. 891.

Application for rehearing stricken.